IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **NUCOR CORPORATION,**<br><br>                    **Plaintiff,**<br><br>          v.<br><br>**UNITED STATES,**<br><br>                    **Defendant.** | Before: Hon. _____<br><br>Court No. 22-00171 |

## COMPLAINT

Plaintiff Nucor Corporation ("Plaintiff" or "Nucor"), by and through its attorneys, alleges and states as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiff brings this Complaint to contest portions of the U.S. Department of Commerce's ("Commerce") final results of the 2019 administrative review of the countervailing duty order on *Certain Hot-Rolled Steel Flat Products from the Republic of Korea*. The final results were issued on May 4, 2022 and were published in the *Federal Register* on May 9, 2022. *See* Issues and Decision Memorandum accompanying *Certain Hot-Rolled Steel Flat Products From the Republic of Korea*, 87 Fed. Reg. 27,570 (Dep't Commerce May 9, 2022) (final results of countervailing duty admin. rev.; 2019) ("Final Decision Memo").

### JURISDICTION

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Sections 516A(a)(2)(A)(i)(I) and (B)(iii) of the Tariff Act of 1930, *codified as amended at* 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (B)(iii).

**Court No. 22-00171**

## STANDING

3.     Plaintiff is a U.S. producer of subject hot-rolled steel flat products, an interested party within the meaning of 19 U.S.C. § 1677(9)(C), and was a party to the administrative review in connection with which this matter arises. Accordingly, Plaintiff has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF ACTION

4.     Plaintiff commenced this action by filing a Summons on June 8, 2022, within 30 days after the publication of the Final Results in the *Federal Register*. Summons (June 8, 2022), ECF No. 1. Plaintiff is filing this Complaint within 30 days after filing the Summons. The Summons and Complaint, therefore, are timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(i)(I) and pursuant to Rules 3(a)(2) and 6(a) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

5.     On August 12, 2016, Commerce published its final determination in the countervailing duty investigation of *Certain Hot-Rolled Steel Flat Products from the Republic of Korea*. *Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products from the Republic of Korea*, 81 Fed. Reg. 53,439 (Dep't Commerce Aug. 12, 2016) (final affirm. deter.). On October 3, 2016, Commerce published the countervailing duty order in the *Federal Register*. *Certain Hot-Rolled Steel Flat Products From Brazil and the Republic of Korea*, 81 Fed. Reg. 67,960 (Dep't Commerce Oct. 3, 2016) (amended final affirm. countervailing duty deters. and countervailing duty order). Commerce initiated the administrative review subject to this Complaint on December 8, 2020, covering the period of review of January 1, 2019 to December 31, 2019. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 78,990, 78,994 (Dep't Commerce Dec. 8, 2020).

**Court No. 22-00171**

6.   On March 31, 2021, U.S. Steel Corporation ("U.S. Steel") and Nucor timely filed a new subsidy allegation. Letter from Cassidy Levy Kent (USA) LLP and Wiley Rein LLP to Sec'y of Commerce, re: *Certain Hot-Rolled Steel Flat Products from the Republic of Korea: New Subsidy Allegations* (Mar. 31, 2021). Specifically, Nucor and U.S. Steel alleged that the Government of Korea ("GOK") provided countervailable subsidies to the steel industry in the form of electricity for less than adequate remuneration. Commerce initiated a review of this alleged subsidy on July 26, 2021. Memorandum from Kelsie Hohenberger, Int'l Trade Compliance Analyst, AD/CVD Duty Operations, Off. V, through Robert Galantucci, Program Manager, AD/CVD Operations, Off. V, to Shawn Thompson, Office Director, AD/CVD Operations, Off. V, re: *Countervailing Duty Administrative Review of Certain Hot-Rolled Steel Flat Products from the Republic of Korea: New Subsidy Allegation* (July 26, 2021).

7.   Commerce issued supplemental questionnaires regarding this new subsidy allegation to the GOK and mandatory respondent Hyundai Steel Company ("Hyundai Steel"), who provided responses on August 12, 2021. Letter from Morris, Manning & Martin, LLP to Sec'y of Commerce, re: *Certain Hot-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-884: Hyundai Steel's Electricity New Subsidy Allegation Questionnaire Response* (Aug. 12, 2021) ("Hyundai Steel NSA QR"); Letter from Yoon & Yang to Sec'y of Commerce, re: *Certain Hot-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-884: GOK's Electricity New Subsidy Allegation Questionnaire Response* (Aug. 12, 2021) ("GOK NSA QR").

8.   In its questionnaire response, the GOK described the structure of the Korean electricity market and the operations of the state-owned electric utility, the Korea Electric Power Corporation ("KEPCO"). It explained that "KEPCO is the exclusive supplier of electricity in Korea," but that "KEPCO itself does not generate electricity." GOK NSA QR at 3. Instead,

**Court No. 22-00171**

KEPCO "purchases electricity from generators" through a market called the Korea Power Exchange ("KPX") "and transmits and distributes {the electricity} to customers." *Id.* The GOK provided information showing that most electricity is generated by six generators that are wholly owned and consolidated KEPCO subsidiaries, and that the KPX in turn is wholly owned by KEPCO and its six generation subsidiaries. *Id.* at 4-5, Exhibit E-1, p. 29-30. The GOK further explained that the price at which KEPCO purchases electricity from generators through the KPX is determined by a formula consisting of a variable cost component, a fixed cost component, and an "adjusted coefficient factor," which "prevent{s} KEPCO's over payment" to certain types of generators. *Id.* at 24. Each of these elements of the electricity price is determined by a "Cost Evaluation Committee" within the KPX and not by the generators themselves. *Id.*

9. The GOK also provided "KEPCO's 2019 cost data for supplying electricity." *Id.* at 12, Exhibit E-22. It explained that these costs "include{d} the payment for the purchase of electricity, labor costs, grid maintenance fee" and various taxes and fees that were "not related to the sales of electricity . . . ." *Id.* at 12. With respect to sales prices, the GOK explained that the mandatory respondent paid for electricity based on industrial electricity prices in a generally applicable electricity tariff schedule with different prices for on-peak, mid-peak, and off-peak demand periods. *Id.* at Exhibit E-1. Hyundai Steel reported the monthly volume and value of its electricity consumption during each of these demand periods. Hyundai Steel NSA QR at Exhibit NSA-7, Exhibit NSA-8.

10. Commerce issued the preliminary results of the administrative review on October 29, 2021 and published them in the Federal Register on November 4, 2021. Issues and Decision Memorandum accompanying *Certain Hot-Rolled Steel Flat Products From the Republic of Korea*, 86 Fed. Reg. 60,797 (Dep't Commerce Nov. 4, 2021) (prelim. results of countervailing duty admin.

rev. and rescission in part, 2019). Applying a "tier-three" benefit methodology, Commerce preliminarily determined that KEPCO supplied electricity to Hyundai Steel for less than adequate remuneration under certain tariff classes but calculated a non-measurable benefit amount. *Id.* at 21-27.

11. With respect to the price at which KEPCO purchased electricity through the KPX, Commerce reasoned that in prior administrative reviews, it had "examined KPX, in the context of an upstream subsidy allegation," and found that there was no benefit conferred by "KPX's prices of the {generation companies'} electricity to KEPCO . . . ." *Id.* at 25. It also found that "the GOK provided financial statements for the {generation companies}" and determined "that each of the six {generation companies} recovered its costs." *Id.*.

12. With respect to the prices at which KEPCO sold electricity to end users, including the respondents, Commerce "preliminarily determine{d} that KEPCO does have a pricing mechanism in place that is based on market principles, but also that the industrial rates did not always recover costs and a rate of return . . . ." *Id.* at 27. For this analysis, Commerce relied on KEPCO's overall cost recovery rates and found that a benefit exists on sales under a specific tariff class to the extent that KEPCO did not cover its costs, inclusive of a return on investment, on sales to all customers in that tariff class. *See* Memorandum from Kelsie Hohenberger, Int'l Trade Compliance Analyst, AD/CVD Operations, Off. V, to Robert Galantucci, Program Manager, AD/CVD Operations, Off. V, re: *Countervailing Duty Administrative Review of Certain Hot-Rolled Steel Flat Products from the Republic of Korea: Calculations for the Preliminary Results: Hyundai Steel* (Oct. 29, 2021) at 5-6.

13. Nucor filed its case brief on January 11, 2021, arguing that Commerce's methodology for determining the benefit conferred by the provision of electricity for less than

**Court No. 22-00171**

adequate remuneration was improper and should be modified for the final determination. Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Certain Hot-Rolled Steel Flat Products from the Republic of Korea: Case Brief* (Jan. 11, 2022).

14. Nucor noted the evidentiary flaws with the cost data on which Commerce relied and argued that it was improper to presume that the data reflected market-based costs. *Id.* at 15-18. Since the record was closed and Commerce had decided to rely on KEPCO's cost data as reported by the GOK, Nucor argued that this data nevertheless showed that a benefit was conferred. Nucor argued that the tier three standard for electricity programs as previously articulated by Commerce is that a benefit is conferred "if the tariff charged <u>to the respondent</u> does not cover 'cost of production' plus a 'profitable return on investment' . . . ." *Id.* at 15 (emphasis added). Nucor thus argued that Commerce erred by finding that no benefit was conferred under a particular tariff class when KEPCO covered its costs inclusive of investment return on all sales to all customers in the aggregate. *Id.* at 19-20. Nucor argued that basing the benefit analysis on the aggregate performance of the government supplier rather than on the prices actually paid by the respondents under review was contrary to the statute, Commerce regulations, and clearly articulated court and agency precedent. *Id.* at 20-21.

15. Commerce issued the final results on May 3, 2022 and published them in the Federal Register on May 9, 2022. Final Decision Memo.

16. Commerce continued to determine whether the provision of electricity for less than adequate remuneration conferred a benefit based on KEPCO's costs and revenues in the aggregate under the relevant tariff classes. *Id.* at 42-47. Commerce reasoned that Nucor's arguments were "inapposite to a tier-three analysis," and that "an evaluation of a government supplier's income and costs, and whether the income covers costs and profit . . . has consistently been part of our

analysis when assessing whether KEPCO's pricing is consistent with market principles and has been found to be within the bounds of what {the regulation} proposes." *Id.* at 44.

17. According to Commerce, its "tier-three methodology has been to first determine whether the prices are market-based. Where prices are set in accordance with market principles and, thus, are at fair value, we determine no benefit is conferred; where they are not market-based (*i.e.*, they have not recovered costs plus profit), we determine a price that would be market-based and compare that to what was actually paid using a benchmark." *Id.* at 46. Commerce also determined that the KEPCO cost data as reported by the GOK reflected market prices because "the wholesale and retail pricing is based on price-setting methodologies that aim to ensure companies in the chain are able to cover their costs, as well as a rate of profit." *Id.* at 45-46.

18. Based in part on the determination that no measurable benefit was conferred by the provision of electricity for less than adequate remuneration, Commerce calculated a final subsidy rate of 0.56% for Hyundai Steel. *Certain Hot-Rolled Steel Flat Products from the Republic of Korea*, 87 Fed. Reg. at 27,570. This appeal followed.

## CLAIMS AND BASES FOR RELIEF

### Count I

19. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 18.

20. Commerce's determination that the provision of electricity for less than adequate remuneration conferred a non-measurable benefit was unsupported by substantial evidence and otherwise not in accordance with law.

**Court No. 22-00171**

## **REQUEST FOR JUDGMENT AND RELIEF**

For the reasons stated in this Complaint, Plaintiff respectfully requests that the Court:

1) Hold that Commerce's final results in the 2019 countervailing duty administrative review of *Certain Hot-Rolled Steel Flat Products from the Republic of Korea* are not supported by substantial evidence on the record and are otherwise not in accordance with law; and

2) Remand the Final Results to Commerce for disposition consistent with the Court's final opinion.

        Respectfully submitted,

        */s/ Alan H. Price*
        Alan H. Price, Esq.
        Christopher B. Weld, Esq.
        Adam M. Teslik, Esq.
        Theodore P. Brackemyre, Esq.
        Claire M. Webster, Esq.

        **WILEY REIN LLP**
        2050 M Street, NW
        Washington, DC 20036
        (202) 719-7000

        *Counsel for Nucor Corporation*

Date:  July 8, 2022

## **CERTIFICATE OF SERVICE**

PUBLIC SERVICE

*Nucor Corporation v. United States*
**Court No. 22-00171**

I certify that a copy of this public submission was served on the following parties, via certified mail, international air mail (\*), and electronic service, on July 8, 2022.

*/s/ Claire M. Webster*

Kelly Ann Krystyniak
**U.S. Department of Justice**
Commercial Litigation Branch – Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

Hendricks Vidal Valenzuela Sandoval
**U.S. Department of Commerce**
Office of the Chief Counsel for Trade Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, DC 20230

Roger B. Schagrin, Esq.
**Schagrin Associates**
900 7th Street, NW
Suite 500
Washington, DC 20001

Thomas M. Beline, Esq.
**Cassidy Levy Kent (USA) LLP**
900 19th Street, NW
Suite 400
Washington, DC 20006

Brady W. Mills, Esq.
**Morris, Manning & Martin, LLP**
1401 I Street, NW
Suite 600
Washington, DC 20005

Stephen P. Vaughn, Esq.
**King & Spalding LLP**
1700 Pennsylvania Avenue, NW
Washington, DC 20006

\*Sungbum Lee
**Yoon & Yang LLC**
34th floor, ASEM Tower
517 Yeongdongdaero, Gangnamgu
Seoul, South Korea

Jinman Ro
**Embassy of the Republic of Korea**
2450 Massachusetts Avenue, NW
Washington, DC 20008